FILED

AUG 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

CARL A. WESCOTT
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA

## NORTHERN DISTRICT

DMR

CV 22 - 4651

CARL A. WESCOTT,

              Plaintiff,

vs.

CHARLES DUNN;
CHRISTOPHER MERCER;
MERIDIAN DEVELOPMENT
    GROUP, LLC

         Defendants.

+ DOES 1 through 25

Civil Action No.

**PLAINTIFF'S VERIFIED LEGAL
COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD;
BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE
SECRETS**

     Plaintiff Carl Wescott, proceeding *pro se*, complains of Defendants Christopher Mercer and

Charles Dunn, and Meridian Development Group, LLC, and in support of his complaint, the Plaintiff

states as follows:

**Parties**

1.  The Plaintiff is an individual who resides in Scottsdale, Arizona.

2.  The first Defendant, Charles Dunn ("Dunn") is an individual living in Napa Valley, California.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**

1

3. The second Defendant, Christopher Mercer ("Mercer") is an individual living in Rosarito, Mexico.

4. The third Defendant, Meridian Development Group, LLC ("Meridian"), is a Nevada LLC.  Mr. Mercer is believed to be the majority owner of Meridian.  Mr. Dunn is Meridian's CFO. Meridian owns multiple subsidiaries in Mexico and significant land in Mexico for development projects.  The Nevada parent entity was and is a way for the Meridian partners to raise money in the United States with the transparency and reporting you would expect from a US entity, as well as the jurisdictional hook that American investors would hope to have.

**Further allegations regarding conspiracy between defendants**

1. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Charles Dunn and Mr. Christopher Mercer, as individuals, in addition to acting for himself and on his own behalf individually, as well as for the benefit of his marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

2. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the other Defendants.

3. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and

2

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

knowledge of each and in conspiracy with all other Defendants (individual and corporate, including Meridian Development Group, LLC).

4. In addition, upon information and belief, there are even more nefarious corporate, trust, and other entity type Defendants beyond Meridian involved in these conspiracies, currently unknown to Plaintiff.   They shall emerge with the benefit of legal discovery.

5. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such corporate entities, along with Meridian Development Group, LLC, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

6. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the Defendants.

7. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

**Venue and Jurisdiction**

5. The Plaintiff would have a colorable argument for jurisdiction in this District based on the residency of Mr. Dunn, a St. Helena resident and also based on the fact that all the US-based business meetings between the parties occurred in San Francisco and Marin Counties.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

6.  Mr. Dunn and the Plaintiff did take two trips to Mexico and met with Mr. Mercer there.

    However, the parties signed an English language contract under California and American law,

    not a Spanish one under Mexican law.

7.  Further, and most importantly so that this Court can assert jurisdiction on all

    Defendants, on June 5th, 2017 Mr. Dunn, Mr. Mercer, and Meridian agreed to a forum

    selection clause of Northern California Courts in a signed contract which specified:

    > "This agreement and any dispute or claim arising out of or in
    > connection with it or its subject matter or formation (including
    > non-contractual disputes or claims) **shall be governed by and
    > construed in accordance with the laws of the United States
    > with a jurisdiction in Northern California. The parties
    > irrevocably agree that the courts of the United States (and
    > specifically, California) shall have exclusive jurisdiction to
    > settle any dispute or claim that arises out of or in connection
    > with this agreement** or its subject matter or formation (including
    > non-contractual disputes or claims)."
    >
    > [**bold**/emphasis added]

8.  Thus, this Court can assert jurisdiction over these Defendants.

9.  For this Court to establish subject matter jurisdiction, the Plaintiff must add that this is an action

    for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for

    damages greater than US $75,000.

10. Alleged damages are explained in further detail below as they are critical to this Court

    establishing subject-matter jurisdiction.

11. Supplemental jurisdiction over the Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367

    and the facts that the individual defendant lives and works in this district, the entity defendant is

    domiciled herein, and the tortious acts, non-acts, and negligence complained of herein occurred

    in this district, too.

4

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**

**Case Summary**

12. This case is about a valuable oceanfront property in Mexico ("the Costa Brava Project"). The Defendants had been sued by their architect for unpaid fees. The project architect was foreclosing on the Costa Brava property, putting the project at risk (as well as investment dollars from many investors). The Plaintiff was an expert in Latin American property development and through his experience and credibility had amassed an investor network ("Plaintiff's Investor Network") that was itself valuable and proprietary. The Defendants offered the Plaintiff an obstensible win-win business opportunity: If Plaintiff could introduce one of his investors to the Defendants, and if Plaintiff's investor was willing to lend monies to Defendants as a mortgage on the subject property, then the Costa Brava property and project could be saved. After signing a simple contract that would pay Plaintiff $32,500 for such a successful investor introduction ("ready, willing and able") at very generous terms for the intended mortgage, Plaintiff lined up a First Investor for the deal (who was willing to invest $650,000 in Costa Brava at the Defendants terms for a six-month first mortgage). When the Plaintiff presented that First Investor for the deal, rather than moving to a close, the Defendants instead changed the terms on the mortgage so as to make it much worse for First Investor. The Defendants then came up with a new lower-return deal for investors, also requiring a lower investment to save their project, with an initial investment of US $300,000 for a 12-month first mortgage. The Plaintiff then presented another investor for consideration, the Second Investor. Plaintiff was arranging a trip in August 2017 for Second Investor's due diligence and for her to wire funds to escrow, when Chris Mercer specifically asked Plaintiff to stop working on the deal. Mr. Mercer represented that he now had an investor on the hook who would close the deal for Costa Brava on better terms than those

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

offered to the Second Investor.   Mr. Mercer and Mr. Dunn both stated that since Plaintiff had

performed on the original contract, that Mr. Mercer and Mr. Dunn would pay Plaintiff his full

success fee of $32,500.  From July 2017 through November 2018, the parties continued to

represent orally and in written form (emails) that they would pay the Plaintiff US $32,500 for

his successfully bringing them investors that were willing to invest on the Defendants' defined

terms.  The Plaintiff brought them not one, but two "ready, willing and able" investors.   Since

then, the Plaintiff has further conversations with Mr. Dunn in which he re-emphasized that the

Plaintiff would be paid, but Mr. Dunn explained, neither Meridian nor Mr. Dunn had much cash

to make the agreed-upon payment.   At this point, with no payments and the statute of

limitations looming, the Plaintiff has been forced to take this step of litigation to preserve his

rights and to obtain a judgment against these Defendants.

**Allegations of Conspiracy**

13. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint,

Mr. Dunn and Mr. Mercer, as individuals, in addition to acting for himself, or themselves and on

his or their own behalf individually, are and were acting as the agents, servants, employees,

and/or representatives of, and with the knowledge, consent, and permission of, and in

conspiracy with, each and all of the Defendants and within the course, scope, and authority of

that agency, service, employment, representation, and conspiracy.  Plaintiff further alleges on

information and belief that the acts of each of the Defendants were fully ratified by each and all

of the Defendants.  Specifically, and without limitation, Plaintiff alleges on information and

belief that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged

6
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**

herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and all of the Defendants.

**Background Facts and Narrative**

14. Plaintiff met Charles Dunn years ago through a mutual friend, Mr. Morgan Beatty, and through the confluence of a network of personal, business, and investment relationships.

15. Dunn and Wescott met again in Spring 2017 (in Marin County).

16. Defendants first sought assistance with the Costa Brava Project immediately thereafter.

17. In May 2017, Defendants expressly offered to pay the Plaintiff $32,500 if he could produce an investor ready willing and able to invest $650,000 as a mortgage in and on the Costa Brava Project.

18. In early June 2017 Plaintiff and Defendants signed a simple contract to that effect (signed in Marin County).

19. Such investors are not easy to find as the Latin American real estate market generally and the Mexican real estate market specifically, offer certain threshold challenges for real estate projects including, but not limited to, legal hurdles for Americans who wish to own real estate in Mexico.

20. The Plaintiff's past success as a real estate developer in Mexico conferred a comparative advantage in attracting and persuading such investors.

21. The Plaintiff's Investor Network was more than simply a list of names. The Plaintiff knows detailed information concerning the risk appetite, liquid net worth and preferred type of project and project terms that would be sought by each investor.

7

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

22. The Plaintiff's Investor Network was and is independently valuable to any real estate developer, particularly an American or expat developer, seeking American investment dollars in Mexico – that fit the Defendants' profile perfectly.

23. Since the events depicted herein, the Plaintiff has struggled to understand and explain the later events, when the Plaintiff fully performed on bringing two ready, willing and able investors who agreed to provide a 6-digit investment for the Defendants, but yet the Defendants did not pay him.

24. One theory of the Plaintiff is that at the time the Defendants' offered to pay the Plaintiff $32,500 for producing an investor (including a signed contract to that effect), it is possible they had no intent of ever making the payment.

25. Continuing that theory, the Defendants' promise was made as part of a scheme to tap into the Plaintiff's Investor Network.

26. The Defendants were aware of the fact that a contentious and expensive divorce had left the Plaintiff in an illiquid position and they schemed to take advantage of the Plaintiff's vulnerability by converting his intangible assets.

27. Continuing on with the narrative, in June of 2017, the Plaintiff produced an investor who was ready, willing, and able to invest $650,000 in the Costa Brava Project on the proposed terms of Defendants.

28. The Plaintiff disclosed the identity of his investor to the Defendants.

29. Rather than moving to a close with First Investor, Mr. Christopher Mercer changed the length of the Costa Brava mortgage from 6 months to 12 months.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

30. At that point, the Plaintiff had twice done all that was necessary to earn his fee per the parties' agreement.

31. He had produced a ready, willing and able investor on the terms originally outlined by Defendants (and then Defendants moved the goalposts on him).

32. However, Plaintiff wished to show the Defendants he was and is a team player.  Thus, Plaintiff continued sourcing further potential investors on the now-revised-mortgage terms.

33. Plaintiff and Defendants did discuss other scenarios for success in June 2017 and July 2017, including splitting the mortgage in to two separate but related closing events.

34. In late July 2017, the Plaintiff produced a Second Investor, Ms. Shelley Alger, who was ready, willing, and able to invest $300,000 or more in the Costa Brava Project on terms that the Defendants had agreed were acceptable in order to save the project and for the Plaintiff to earn his fee again.

35. Ms. Alger agreed to make the investment on the new terms with the one year first mortgage.

36. The Parties and Ms. Alger were just finalizing the details for Ms. Alger to come to Mexico with them to view the property and sign investment paperwork when Mr. Mercer repudiated the Parties' original contract.

37. At that point, Mr. Mercer, as agent for Defendants, then informed Plaintiff that he had a different investor that could and would provide the Costa Brava mortgage on better terms than the Defendants had offered Second Investor.

38. Mr. Mercer and Mr. Dunn stated (and also put in writing on multiple occasions, from July 2017 through November 2018 and beyond) that they would pay Plaintiff $32,500.

9

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

39. The result of the parties' interaction is that the Plaintiff has fully performed twice; the Defendants have not paid the Plaintiff; and the Defendants have been unjustly enriched by obtaining the identity of wealthy investors who are interested in Mexican real estate development and willing to contend with higher risks of litigation to obtain out-sized returns - precisely the kind of relatively rare investor the Defendants needed.

40. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights.  (Also, as per *Fed. R. Civ. P 38(b)*).

41. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

**Count I  Breach of Contract**

42. Plaintiff hereby realleges and incorporates by reference the allegations in preceding paragraphs 1-41 as though fully set forth in this Cause of Action.

43. Mr. Dunn and Mr. Mercer have defaulted in making each of the promised payments of $32,500 to Plaintiff.

44. The Parties had valid, binding contracts.

45. The Plaintiff fully performed, twice.

10
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

46. There is now due, owing and unpaid from the Defendants, the sum of $32,500 (twice) plus accrued prejudgment interest at the rate of 10% per annum, as per California law.

47. The Plaintiff will fully prove all allegations and the precise damages at jury trial.

## Count II  Promissory Fraud

48. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

49. To induce the Plaintiff to disclose the identity of First Investor the Defendants promised:

> (a) That they would enter into a transaction with First Investor in the Costa Brava Project on the originally proposed terms;
> (b) That the Plaintiff would be paid a fee of $32,500;
> (c) That the Plaintiff's confidential information would be respected and not be misused or disclosed by Defendants and;
> (d) That the Plaintiff would be allowed to partner with the Defendants in connection with multiple projects on preferred terms (collectively "the Defendants' Promises")

50. To induce the Plaintiff to disclose the identity of Second Investor the Defendants promised:

> (e) That they would enter into a transaction with Second Investor in the Costa Brava Project on the originally proposed terms or a variant thereof;
> (f) That the Plaintiff would be paid a fee of $32,500;
> (g) That the Plaintiff's confidential information would be respected and not be misused or disclosed by Defendants and;
> (h) That the Plaintiff would be allowed to partner with the Defendants in connection with multiple projects on preferred terms (collectively "the Defendants' Promises")

51. At the time the Defendants (including both Mercer & Dunn, acting individually, in concert, and as agents for each other and for Meridian) made Defendants' Promises, they had no intent to honor them. In fact, the Defendants' Promises were made as part of a scheme to access Plaintiff's Investor Network without compensating the Plaintiff.

52. The Defendants intended that the Plaintiff rely on the Defendants' Promises.

11

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

1    53. The Plaintiff reasonably relied on the Defendants' Promises.

2    54. The Plaintiff has been directly and proximately damaged through his reliance on the

3          Defendants' Promises by losing his promised fee; having his relationship with First Investor and

4          Second Investor compromised and damaged; and losing the protection and value of his trade

5          secrets.

6

7    55. The Plaintiff will fully prove all allegations and the precise damages at jury trial.

8

9                       **Count III Breach of Fiduciary Duty**

10

11    56. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

12

13    57. The individual Defendants represented to the Plaintiff multiple times, verbally and in writing,

14          that they intended to partner with him on multiple projects.

15    58. Indeed, the Defendants did partner with the Plaintiff on a project in which they offered him

16          equity and to be part of the General Partnership.

17    59. Further, in the structure of the deal the parties laid out, the Plaintiff would introduce a ready,

18          willing and able investor, and it was up to the Defendants to sign and facilitate a closing.  That

19          arrangement is also a form of partnership where the parties collaborated and owed duties to each

20          other.

21

22    60. As Partners of the Plaintiff, the Defendants jointly and severally owed the Plaintiff a fiduciary

23          duty to deal fairly with the Plaintiff and to maintain his trade secrets in confidence.

24    61. The Defendants' breached their fiduciary duty to Plaintiff by failing and refusing to pay him for

25          producing First Investor and Second Investor per the terms of the parties' agreement and for

26

12

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**

obtaining access to the Plaintiff's confidential and trade secret information pretextually and for their own sole advantage.

62. The Plaintiff has not been paid his promised fee; has had his relationships with First Investor and Second Investor compromised and damaged; and has lost the protection and value of his trade secrets (Plaintiff's Investor Network).  In addition, the Plaintiff has expended time and money in pursuing investors on behalf of the Defendants and has lost opportunity cost as well.

63. The Plaintiff will fully prove all allegations and the precise damages at jury trial.


**Count IV, Misappropriation of Trade Secrets CCP 3426 et seq – Mercer, Dunn**


64. The Plaintiff realleges paragraphs 1-41 as if fully set out herein.

65. Pursuant to CCP 3426.1(b)(ii) the Defendants acquired confidential information belonging to Plaintiff under circumstances (e.g. the partnership, a fiduciary relation) giving rise to a duty to maintain its secrecy or limit its use.

66. Specifically, the Plaintiff's Investor Network was novel and proprietary in at least the following respects:

> (a) The Plaintiff's knowledge of the net worth of each member of the Plaintiff's Investor Network;
> (b) The Plaintiff's knowledge of the risk appetite of each member of the Plaintiff's Investor Network;
> (c) The Plaintiff's knowledge of the preferred terms for each member of the Plaintiff's Investor Network;
> (d) The Plaintiff's use of his own brand, expertise and credibility to maintain relationships with each member of the Plaintiff's Investor Network.

13
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

67. The Plaintiff's Investor Network was valuable and concrete enough to be protectable under California law. The Plaintiff had, in effect, <u>identified and cultivated a list of niche investors for complex, high risk and high return, Latin American real estate development projects. Further, each such investor, including First Investor and Second Investor respected the Plaintiff's professional judgment enough to devote valuable time to assessing projects brought to their attention by the Plaintiff</u>. The Plaintiff's Investor Network would likely take millions of dollars to replicate.

68. The Plaintiff took all reasonable precautions to preserve the confidentiality of the Plaintiff's Investor Network. The Plaintiff only disclosed the Plaintiff's Investor Network (or the identities of individual members therein) in a contractual context that created a fiduciary relationship. Further, Plaintiff had Defendants sign a Non-Circumvent Agreement with regard to those investors and introductions that Plaintiff would and did facilitate.

**69.** The Defendants' misappropriated the Plaintiff's Investor Network and trade secrets by inducing disclosure, not only of the identity of First Investor and Second Investor and many more, but relatedly of Plaintiff's proprietary techniques for assessing and presenting Latin American development projects, from the Plaintiff in the context of a fiduciary and contractual relation and then misappropriating the value by refusing to compensate the Plaintiff.

70. The Plaintiff has been damaged as a result of the Defendants misappropriation of his trade secrets by losing his promised fee; having his relationship with Investor A compromised and damaged; and losing the protection and value of his trade secret in Plaintiff's Investor Network.

71. The Plaintiff will fully prove all allegations and the precise damages at jury trial.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**

WHEREFORE, Plaintiff prays that this Court enter Judgment:

(a) As to Count I, for $65,000 in base damages caused by the Defendants' breaches of contract and repudiations, plus 10% annual prejudgment interest and consequential damages.

(b) As to Count II for damages caused by Defendants' acts of promissory fraud, in an amount to be determined at trial, plus the imposition of punitive damages in an amount sufficient to punish and deter such wrongful acts by Defendants in the future;

(c) As to Count III, for damages caused by Defendants' acts of fiduciary breach in an amount to be determined at trial, plus the imposition of punitive damages in an amount sufficient to punish and deter such wrongful acts by Defendants in the future;

(d) As to Count IV, for damages caused by the Defendants' acts of misappropriation in an amount to be proved at trial plus double damages for willfulness pursuant to 3426.3;

(e) For reasonable future attorney's fees and for the costs of this action;

(f) For reasonable compensation for the value of his time while the Plaintiff has to represent himself as he cannot afford an attorney (*quantum meruit*).

(g) For such other and further relief as this Court deems just and proper

RESPECTFULLY SUBMITTED

_____

Carl A. Wescott, *pro se*

15

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and MISAPPROPRIATION OF TRADE SECRETS**

1

2                           **VERIFICATION**

3     I, Carl A. Wescott, under penalties provided by law pursuant to sections §446 and §2015.5 of the
      Code of Civil Procedure, as well as the federal laws of the United States of America, certify that the
4     facts set forth in this instrument are true and correct, except as to matters therein stated to be on
      information and belief and as to such matters the undersigned certifies as aforesaid that he verily
5     believes the same to be true.

6

7     _____.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

16
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT, PROMISSORY FRAUD; BREACH OF FIDUCIARY DUTY; and
MISAPPROPRIATION OF TRADE SECRETS**
